## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-14280-CIV-MAYNARD

**MARY SOL GONZALEZ RODRIGUEZ**

　　　　Plaintiff,

v.

**KILOLO KIJAKAZI,** Acting Commissioner
of the Social Security Administration

　　　　Defendant.

_____/

### <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DE 23 & DE 29)</u>

Plaintiff Mary Sol Gonzalez Rodriguez brings this action under the Social Security Act seeking judicial review of Defendant's final decision denying her application for disability benefits.  Plaintiff timely exhausted her administrative remedies, and Defendant's decision is ripe for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

After Defendant filed the certified administrative record, DE 19 (cited herein as "R. __"),[1] Plaintiff filed her Motion for Summary Judgment.  DE 23.  Defendant responded with a Motion for Summary Judgment, DE 29, and Plaintiff replied, DE 32.  Having carefully considered the parties' briefing and the record, Plaintiff's Motion for Summary Judgment, DE 23, is **GRANTED** and Defendant's Motion for Summary Judgment, DE 29, is **DENIED** for the reasons set forth below.

---

[1] A 2,252-page certified transcript (DE 19) contains the entire administrative record.  The transcript index (DE 19 at 2-6) identifies each document or set of documents by exhibit number and description.  I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

## **BACKGROUND**

On May 19, 2016, Plaintiff applied for disability insurance benefits, alleging a disability onset date of December 20, 2014.  R. 191-194.  Plaintiff was fifty-six years old on her application date.  *Id.*; R. 202-204.  She has a twelfth-grade education and past relevant work as a customer service representative and bank teller.  R. 215.  Plaintiff alleged that she became unable to work due to neck injury, difficulty using her arms, headaches, finger swelling, depression, and anxiety. R. 214.

Plaintiff's application was denied initially and on reconsideration.  R. 86-94, 96-108.  On May 11, 2018, at Plaintiff's request, Administrative Law Judge ("ALJ") Valencia Jarvis held a hearing at which Plaintiff, Plaintiff's counsel, and a vocational expert appeared.  R. 40-85.  On October 18, 2018, ALJ Jarvis issued a decision finding Plaintiff not disabled (the "2018 Decision").  R. 24-35.  On September 27, 2019, the Appeals Council denied Plaintiff's request to review ALJ Jarvis' 2018 Decision.  R. 1-9.

Plaintiff sought judicial review in the United States District Court for the Southern District of Florida on November 26, 2019.  *See Rodriguez v. Saul*, 19-cv-62934-Ruiz/Strauss (S.D. Fla. Nov. 26, 2019).  On May 8, 2020, U.S. District Judge Rodolfo A. Ruiz II granted Defendant's unopposed motion for remand.  R. 1562-63.  On remand, the Commissioner was instructed to "(1) further consider Plaintiff's testimony concerning her symptoms and subjective complaints; (2) reevaluate Plaintiff's maximum residual functional capacity; (3) if appropriate, obtain supplemental evidence from a vocational expert to clarify the effects of the assessed limitations on the occupational base; (4) take any further action to complete the administrative record; and (5) issue a new decision."  *Id*.

On remand, the Appeals Council vacated the prior decision and remanded to another ALJ with instructions to resolve the following issues:

- The hearing decision does not contain an adequate evaluation of the claimant's symptoms. The Administrative Law Judge acknowledged that the claimant had "undergone invasive injections and/or procedures, and she has sought to relieve her symptoms through alternative pain reducing procedures, which suggest her symptoms were genuine" (Decision, page 8). This statement appears inconsistent with the subsequent finding that the claimant's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with her described activities of daily living (*Id.* at page 9). Further, the hearing decision overstates the claimant's activities of daily living. It is not clear how the preparation of simple meals and the ability to perform household chores and care for a disabled child without assistance indicate that the claimant could sustain full-time work on a regular and continuing basis (*Id.* at pages 9-10; see also Exhibit C4E, pages 2-3). In addition, the claimant testified that she performed limited grocery shopping, was unable to drive because she has difficulty turning her neck, engaged in no social activities, and has difficulty sitting for extended periods of time (Tr. 15-17). Further consideration of the claimant's symptoms is necessary.

- The hearing decision does not contain an adequate evaluation of the treating source opinion of Kenneth Ward, M.D., who opined, among other limitations, that the claimant could sit for less than one hour in an eight-hour workday, stand and/or walk for less than one hour in an eight-hour workday, and occasionally lift up to five pounds (Exhibit C4F). In discrediting Dr. Ward's opinion, the Administrative Law Judge reasoned that it did not relate to the period at issue before the claimant's date last insured (DLI) for Title II benefits, March 31, 2016. The Administrative Law Judge acknowledged that Dr. Ward initially saw the claimant three days prior to DLI, on March 28, 2016 (Decision, page 10; Exhibit C1F, page 27). However, there is an inconsistency in Dr. Ward's opinion because after indicating he treated the claimant four times between Mach 28, 2016 and July 25, 2016, Dr. Ward indicated the claimant was first seen on July 25, 2016, after the claimant's insured status expired (Decision, page 10; Exhibit C4F, pages 4 and 10).

This discrepancy is significant because Dr. Ward opined that the claimant's impairment had been present at the level indicated, "since patient was *initially examined*, July 25, 2016" (Exhibit C4F, page 10) (emphasis added). The Administrative Law Judge gave Dr. Ward's opinion great weight as of July 25, 2016 but only little weight for the period at issue before the DLI. In so doing, the Administrative Law Judge relied on Dr. Ward's assessment that the claimant had antalgic gait and reduced range of motion as of July 25, 2016 (Decision, page 10; Exhibit C4F, page 5). Given the clerical error in Dr. Ward's opinion pertaining to the date he first treated the claimant, it is plausible that Dr. Ward

intended for the assessment to relate to the period at issue before the DLI. However, there is no indication in the record that the Administrative Law Judge attempted to recontact Dr. Ward to clarify this discrepancy.

Moreover, aside from noting Dr. Ward's first examination occurred prior to the DLI, the hearing decision does not address the findings from Dr. Ward's treatment notes relevant to whether the claimant required a cane to ambulate or balance before the DLI. Despite generally unremarkable findings at the initial examination in March 2016, Dr. Ward noted gait disturbance, ambulation with a straight cane, and a decrease in functional status with a poor rehab potential (Exhibit C1F, pages 28 and 33). Further consideration and clarification of Dr. Ward's treating source opinion, and its effect on the claimant's maximum residual functional capacity throughout the period at issue, is necessary.

R. 1568-70. The Appeals Council ordered the new ALJ to: (1) "[f]urther evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms"; (2) "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations"; (3) "[f]urther evaluate the treating source opinion of Dr. Ward pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence"; and (4) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." *Id*.

Pursuant to the remand, on November 18, 2020, Administrative Law Judge Sylvia H. Alonso held a hearing at which Plaintiff, Plaintiff's counsel, and a new vocational expert appeared. R. 1514-50. On February 10, 2021, ALJ Alonso issued another decision finding Plaintiff not disabled (the "2021 Decision"). R. 1498-1507. The parties acknowledge that the 2021 Decision by ALJ Alonso became the Commissioner's final decision.[2] DE 23 at n. 5; DE 29 at 2.

---

[2] Upon remand from a district court, an ALJ's subsequent decision becomes the final decision of the Commissioner where, as here, the Appeals Council does not assume jurisdiction of the case. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 909 (11th Cir. 2015) (citations omitted ).

Accordingly, Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that she is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through

step four and then the burden shifts to the Commissioner at step five.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013).  If an individual is found disabled or not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a).  After completing the foregoing administrative process, a claimant may seek review in federal court.  42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner."  20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial."  *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'"  *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'"  *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)).  "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'"  *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59; *see also Biestek*, 139 S. Ct. at 1157 (the governing standard of review defers to the presiding ALJ, "who has seen the hearing up close"). However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result

in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court must also review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

In the 2021 Decision, ALJ Alonso proceeded through the five-step sequential analysis as follows:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 20, 2014, through her date last insured of March 31, 2016. R. 1501.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the cervical spine, mild thoracic spondylosis, mild hallux valgus, and minimal degenerative change of the first left metatarsal joint. *Id.*[3]

At step three, notwithstanding the noted impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings. R. 1502. The ALJ then concluded that Plaintiff

---

[3] The ALJ noted that the record indicates that Plaintiff has floaters in her left eye; however, the ALJ found this condition to be non-severe. R. 1501. The ALJ further noted that "the record as a whole … demonstrated the existence of degenerative disc disease of the lumbar spine[,]" but observed that "evidence of this impairment is dated after the date last insured, and thus, is inapplicable to the period at issue." *Id.* Additionally, the ALJ found that Plaintiff's medically determinable mental impairment of depression caused no more than minimal limitation in her ability to perform mental work and, therefore, determined it to be non-severe. R. 1501-02.

retained the RFC to perform light work as defined in 20 CFR § 404.1567(b) except with the following limitations:

> stand and walk for six hours and sit for six hours in an eight-hour day; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally reach overhead with the bilateral upper extremities; occasional exposure to extreme cold; no exposure to vibrations or hazards.

R. 1503.

At step four, considering Plaintiff's RFC and based on testimony from a vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a cashier (DOT 211.462-010, light, SVP 2), teller (DOT 211.362-108, light, SVP 5), and telephone representative (DOT 299.357-014, sedentary, SVP 3).  R. 1506.

The ALJ therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period of December 20, 2014, through March 31, 2016.  R. 1507.

## **DISCUSSION**

At the outset, I first consider a threshold question raised by both parties about the degree to which the 2018 Decision should be considered in determining this appeal.  A key reason Plaintiff says the 2021 Decision is not supported by substantial evidence is that it contains even less analysis and support than the 2018 Decision, which the Appeals Council vacated due to inadequate rationale.  According to the Plaintiff, "[i]nstead of fixing the errors in the prior vacated findings by providing more or different rationale," the 2021 Decision "repeats the same errors, despite explicit findings [from the Appeals Council] explaining why the prior rationale or conclusions were flawed."  DE 32 at 1-2.  Defendant responds that consideration of the 2018 Decision at this juncture is misplaced because the 2018 Decision was vacated, and decisions that have been vacated

are officially gone and have no legal effect whatsoever.  DE 29 at 5 (citing, *inter alia*, *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)).

While Defendant is correct that the 2018 Decision has been vacated and has no legal effect, I am not persuaded that it cannot be considered in this appeal because the Appeals Council, in explaining where the 2018 Decision fell short, identified specific areas to be addressed and corrected on remand.  Thus, the Appeals Council's Order vacating the 2018 Decision sets a bar by which the subsequent Decision may be measured. The Appeals Council's discussion and identification of ways in which the 2018 Decision was flawed is relevant because if ALJ Alonso replicated the same or similar errors in the 2021 Decision, that decision is similarly unlikely to be supported by substantial evidence.

With that in mind, I turn to Plaintiff's arguments for remand.  First, Plaintiff contends that ALJ Alonso's rejection of Plaintiff's subjective symptoms and limitations is unsupported by substantial evidence.  Second, Plaintiff argues that ALJ Alonso improperly weighed the medical opinion evidence, particularly the opinions of Plaintiff's treating physician, Dr. Ken Ward, and Plaintiff's treating psychiatrist, Dr. Erika Dudley.  Third, Plaintiff contends that the ALJ's determination that Plaintiff can perform her "past relevant work" is unsupported by substantial evidence.

Upon review of the record, I agree with Plaintiff that substantial evidence does not support the 2021 Decision and remand is appropriate.  Regarding the ALJ's finding that Plaintiff's statements about her symptoms were inconsistent with the medical evidence, a comprehensive review of the record shows that in discussing the medical record the ALJ omitted key aspects of Plaintiff's treatment which may support Plaintiff's claim of disability. While there is no rigid requirement that an ALJ discuss every piece of evidence in her decision, *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005), an ALJ may not "cherry-pick" evidence to support a finding of non-disability. *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (finding that the "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.") (quotation omitted). The ALJ's decision as a whole must be supported by substantial evidence in the record. *Dyer*, 395 F.3d at 1211. Here, the ALJ failed to address important aspects of Plaintiff's treatment during the relevant time period, including Plaintiff's receipt of multiple trigger point injections and Plaintiff's long-term use of various pain medications with limited success. The ALJ also relied on essentially the same activities of daily living that the Appeals Council previously rejected as insufficient and failed to adequately address Plaintiff's use of a cane. Regarding the ALJ's evaluation of the medical opinion evidence, the ALJ's finding that Dr. Ward's medical opinions merited "little weight" is not adequately supported. The ALJ failed to articulate good cause for not giving substantial weight to Plaintiff's treating physician about Plaintiff's limitations.

I.    **ALJ Alonso's Rejection of Plaintiff's Subjective Symptoms and Limitations is not Supported by Substantial Evidence**

To establish disability based upon pain or other subjective symptoms, Plaintiff must present: (1) evidence of an underlying medical condition and (2) either (a) "objective medical evidence that confirms the severity of the alleged pain arising from that condition," or (b) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "In evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) [p]recipitating and aggravating factors; (4) the effectiveness and side effects of any medications; and (5) treatment or

other measures taken by the claimant to alleviate symptoms." *Underwood v. Soc. Sec. Admin.,*

*Comm'r*, 750 F. App'x 944, 947 (11th Cir. 2018) (citations and quotations omitted).

The 2021 Decision details Plaintiff's testimony about her impairments as follows:

> [Plaintiff] testified that she started using a cane in 2001. She indicated that her
> condition worsened in 2015. She indicated that she is unable to concentrate, and
> she reported that her hands are always shaky. She testified that her medication was
> effective, but that she stopped taking it after losing her insurance. She also testified
> that she received injections in the back, but reported only part time relief. She
> reported that she uses a cane, but admitted it was not prescribed and that she bought
> it herself. She claimed that she has difficulty lifting, squatting, bending, standing,
> reaching, walking, sitting, kneeling, talking, stair climbing, seeing, remembering
> things, completing tasks, concentrating, understanding, following instructions,
> using her hands, and spending time with others.

R. 1503-04.

The ALJ considered Plaintiff's testimony and determined that, while the evidence

established the presence of medically determinable impairments that could reasonably be expected

to cause the alleged symptoms, Plaintiff's statements as to the intensity, persistence, and limiting

effects of her symptoms were not entirely consistent with the medical evidence and other evidence

in the record. R. 1504. In discussing the medical evidence, the ALJ first noted that "a large portion

of the record is outside the period at issue[.]" R. 1504. The ALJ went on to observe that:

> [n]ear the alleged onset date, the claimant had normal range of motion throughout
> without edema (Ex. C14F/6) [R. 1221-1455]. In May 2015, the claimant was not in
> distress. She had normal range of motion of the neck. Additionally, she had normal
> range of motion throughout the musculoskeletal system. Neurologically, she had
> normal strength without nerve deficit or sensory deficit (Ex. C7F/6) [R. 799-820].
> A January 2016 MRI of the cervical spine revealed C6-7 advanced spondylosis with
> left greater than right neural foraminal stenosis and mild thecal sac stenosis, as well
> as T1-2 spondylosis with left neural foraminal stenosis (Ex. C1F/9) [R. 273-405].
> An x-ray of the left foot was taken at the time, which showed very mild hallux
> valgus and minimal degenerative change in the first left metatarsal phalangeal joint
> (Ex. C1F/10) [R. 273-405]. An examination performed at that time revealed
> tenderness with palpation to the medial eminence of the left first
> metatarsophalangeal joint. Range of motion was asymptomatic. There was no
> digital clubbing, cyanosis, or necrosis. Light touch was intact (Ex. C1F/25) [R.
> 273-405]. A follow up x-ray of the left foot showed mild hallux valgus and pes

planus (Ex. C1F/7) [R. 273-405]. On March 28, 2016, there was tenderness to palpation to the left cervical paraspinals. Range of motion elicited pain, but Romberg was negative. Strength was normal in the lower extremities (Ex. C1F/30-31) [R. 273-405].

R. 1504-05.

The ALJ's discussion of the medical evidence, however, is incomplete. The ALJ fails to address evidence in the record about Plaintiff's treatment history, measures taken during the alleged disability period to alleviate her symptoms, and the effectiveness and side effects of these treatments. The record shows that from at least 2014 through March 2016 Plaintiff saw Dr. Warden Emery III, a neurologist at the Emery Neuroscience Center, every 6 to 8 weeks complaining of moderate to severe pain in her neck and/or back. R. 408-583. Plaintiff received multiple trigger point injections for cervical and lumbar pain. R. 526-27. She also was prescribed various pain and anxiety medications, including Percocet, Soma, Ultram, Valium, and Xanax. R. 575-81. Plaintiff saw Dr. Emery through her date last insured, when she discontinued seeing him because she lost her insurance and began going to the VA for treatment. R. 48-49, 1531. ALJ Jarvis acknowledged this treatment history in the 2018 Decision, noting that Plaintiff had "undergone invasive injections and/or procedures, and she has sought to relieve her symptoms through alternative pain reducing procedures, which suggest her symptoms were genuine." R. 31. In the 2021 Decision, however, ALJ Alonso fails to discuss any evidence from Plaintiff's treatment with Dr. Emery, other than a passing reference to Plaintiff's testimony about the effectiveness of these treatments. The ALJ also fails to discuss a diagnostic interpretation of Plaintiff's cervical spine MRI by Dr. Paul Rolen in March 2016 indicating facet fission at C3-4 through C5-6 levels, C6-7 bulge with hypertrophic changes contributing to severe left and moderate right foraminal stenosis, T1-2 disc protrusion narrowing the bilateral neural foramen, mild cervical spondylosis, and reverse lordosis of the cervical spine with mild retrolisthesis of C6. R. 469-70.

Relying on *Dyer*, 395 F.3d at 1211, the Commissioner responds that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." DE 29 at 8-9.  In *Dyer*, the ALJ failed to expressly reference the claimant's taking of Lortab, which he had taken only on one occasion in connection with an injury having nothing to do with his disability application.  *Dyer*, 395 F.3d at 1211.  Here, the record shows multiple injections and prescriptions for pain medicines over time specifically in relation to Plaintiff's complaints of cervical and thoracic spinal pain.  Yet, the ALJ barely mentions this evidence and fails to explain her findings relating to it, despite the Appeals Council's express observation that it "appears inconsistent with" a "finding that the claimant's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with her described activities of daily living."  R. 1568. *Dyer* does not authorize an ALJ to ignore important evidence directly relating to a Plaintiff's disability claim.  A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding other important contrary evidence.  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

Instead of addressing the evidence most relevant to Plaintiff's spinal impairments, the 2021 Decision relies primarily on observations made by medical staff when Plaintiff went to the Emergency Room ("ER") for medical issues other than her claimed spinal impairments.  For example, Plaintiff was observed to have normal range of motion throughout without edema when she went to the ER for a panic attack on December 14, 2014.  R. 1226.  In May 2015, she was noted to have normal range of motion of the neck and throughout her musculoskeletal system when she went to the ER because she had floaters in her eyes.  R. 804.  X-rays and examinations of Plaintiff's feet, while relevant to the ALJ's evaluation of Plaintiff's mild hallux valgus and degenerative changes to her left toe, are not particularly helpful to assessing her limitations due to

her spinal impairments.  The reason for a medical appointment is relevant when assessing how records from that appointment are consistent with other evidence in the case.  *See Allensworth v. Colvin*, 814 F.3d 831, 833-34 (7th Cir. 2016) (criticizing the ALJ for discounting the effects of back pain due to medical appointments showing no abnormalities in the claimant's neck and another appointment for medication management of a different condition).

The ALJ also erred in relying on essentially the same activities of daily living as the 2018 Decision, despite the Appeals Council's express instruction that such reliance was insufficient without further explanation.  The 2018 Decision concluded that Plaintiff was not disabled because she prepared simple meals, did laundry, and cared for her disabled child.  The Appeals Council rejected this reasoning, stating:

> It is not clear how the preparation of simple meals and the ability to perform household chores and care for a disabled child without assistance indicates that the claimant could sustain full-time work on a regular and continuing basis (*Id*. at pages 9-10; see also Exhibit C4E, pages 2-3).  In addition, the clamant testified that she performed limited grocery shopping, was unable to drive because she has difficulty turning her neck, engaged in no social activities, and has difficulty sitting for extended periods of time (Tr. 15-17).

R. 1568.  Despite this, ALJ Alonso similarly concludes in the 2021 Decision that Plaintiff's activities of daily living are not as limited as one would expect because:

> … she attends to her personal care needs with some alleged difficulty, prepares simple meals, does housework, drives, shops, counts change, handles a savings account, and uses a checkbook (Ex. C4E/2-6).  Additionally, she testified that she is the primary caregiver for her daughter, who has multiple sclerosis and her spouse, who is a disabled veteran.

R. 1504.  Like the 2018 Decision, ALJ Alonso fails to explain how Plaintiff's ability to prepare simple meals, count change, handle a savings account, use a check book and care for her family members undermines her subjective claims that she cannot sit or stand for long periods of time,

lift, reach, or bend due to pain in her neck and spine.  At her first and second hearings, Plaintiff testified that during the relevant time period she did not prepare full meals but instead cooked food in the microwave;  her driving was limited because she had a difficult time turning her neck; she drove her family members to medical appointments a few times a month; she provided primarily emotional support and financial advice to her daughter but did not help her daughter dress or bathe; and the  Multiple Sclerosis Foundation also provided support for her daughter's physical needs. R. 40-85, 1514-50.  Like ALJ Jarvis, ALJ Alonso fails to explain how Plaintiff's ability to do these activities means she is able to perform full time work.

Lastly, the ALJ fails to adequately address Plaintiff's use of a cane.  While ALJ Alonso implicitly rejects Plaintiff's need for a cane with the statement that "it was not prescribed and [] she bought it herself, " R. 1503-04, without more that reasoning is insufficient.  Courts in this circuit have concluded that "a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity."  *See Wood v. Comm'r*, 2021 WL 2634325 (M.D. Fla. June 25, 2021), *7; *Williams v. Comm'r*, 2019 WL 2511592, at *3 (M.D. Fla. June 18, 2019); *Duncan v. Colvin*, 2016 WL 1253458, at *10 (N.D. Ga. Mar. 31, 2016); *Norman v. Comm'r*, 2015 WL 4397150, at *5 (M.D. Fla. July 16, 2015); *Wright v. Colvin*, 2014 WL 5591058, at *4 (S.D. Ga. Nov. 3, 2014).  Since Plaintiff's lack of prescription is the only reason given for ALJ Alonso's apparent rejection of Plaintiff's use of a cane, remand is appropriate.

## II.   ALJ Alonso's Assessment of Dr. Ward's Medical Opinion is not Supported by Substantial Evidence

Plaintiff also contends that the ALJ erred by assigning little weight to the opinions of treating physician Dr. Kenneth Ward.  Pursuant to regulations applicable to disability benefit

applications filed prior to March 27, 2017,[4] an ALJ is required to give treating physician medical opinions substantial or considerable weight absent good cause justifying a contrary finding. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (stating that "[a]bsent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight" (citation and quotation omitted)).   Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.*

On July 27, 2016, Dr. Ward completed a Physical Capacities Evaluation of Plaintiff.  R. 585-595.  Dr. Ward indicated that he had seen Plaintiff for four examinations, with the first on March 28, 2016, and that his opinion was applicable from that first exam onward.  R. 588.  He described Plaintiff's diagnoses as chronic axial cervical pain, interscapular muscle strain, intercostal muscle strain, and degenerative lumbar spine.  *Id*.  He said Plaintiff demonstrated an antalgic and painful gait, moderately restricted range of motion with pain, and lumbar paraspinal muscle spasm since she was initially examined.  He opined that Plaintiff could sit less than an hour a day, could stand and/or walk less than an hour a day, could only occasionally lift up to five pounds due to her spinal impairment, pain, and fatigue, could not use her hands for repetitive pushing or pulling or for fine manipulation, would need rest breaks without restriction, and would not be capable of sedentary or light exertional activity.  R. 585-94.  Further on in the form, Dr. Ward subsequently answered inconsistently that Plaintiff's impairment was "since patient was initially examined, July 25, 2016."  R. 594.

---

[4] "This regulation applies to claims filed before March 27, 2017 . . . .Claims filed on or after that date are governed by a new regulation prescribing somewhat different standards for the handling of opinions from treating physicians." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (citation omitted).

On October 9, 2019, after the Appeals Council instructed that Dr. Ward should be recontacted on remand for his opinion to be clarified, Dr. Ward provided a correction to his prior answer, noting that the duration of Plaintiff's impairments was "[s]ince patient was initially examined, March 28, 2016," instead of since July 25, 2016 as he had previously stated. R. 1788. He confirmed that Plaintiff's primary care provider requested that Plaintiff have a specialty consult with Dr. Ward on February 6, 2016, and he first examined her pursuant to that request on March 28, 2016. *Id*.

After correcting his prior answer regarding dates, on November 17, 2020, Dr. Ward responded to interrogatory questions, reiterated Plaintiff's diagnosis, and confirmed his findings in the March 28, 2016 treatment note. He opined that as of March 2016, Plaintiff would have been limited to "limited, partial, restricted sedentary work capacity" based on his review of the examination findings and diagnostic testing as of that date. In support of his opinion, he referenced Plaintiff's "limited cervical range of motion exacerbated by neck pain." R. 2251-52.

Regarding Dr. Ward's opinion evidence, the 2021 Decision states as follows:

> Kenneth Ward, M.D., found the claimant could sit for less than one hour and stand and/or walk for less than one hour, as well as occasionally lift up to five pounds. He also found that the claimant could not repetitively perform fine manipulation or push and pull. He noted that the claimant requires complete freedom to rest frequently without restriction and would need to lie down during the day (Ex. C4F). This opinion is given little weight. It is not supported by his own exam, which took place three days prior to the date last insured. Moreover, it is inconsistent with the record as a whole, which demonstrates some tenderness and pain on range of motion, but negative Romberg and normal strength (Ex. C1F/25, 30-31).

> Dr. Ward also submitted an additional opinion, noting that the claimant is limited to less than sedentary work. This is given little weight. He examined the claimant one time prior to the date last insured. This opinion is based on that one time exam. The rationale he gave in support of the opinion was the claimant's [limited] cervical range of motion exacerbated by neck pain. DDS,[5] discussed below, likewise

---

[5] Disability Determination Services employs doctors to evaluate a claimant's treating sources' medical records. *See Disability Determination Services and Their Workload*, John E. Owen, III,

considered the claimant's reported pain when formulating their opinion, but ended in a different result.  Dr. Ward's lack of longitudinal treating relationship with the claimant makes the opinion less persuasive.  Moreover, although his treatment notes indicate the claimant was using a cane for ambulation, the claimant testified the cane was not prescribed.

R. 1505.

The ALJ's rationale is insufficient because the ALJ incompletely characterized Dr. Ward's March 28th treatment note and failed to compare Dr. Ward's opinions to the record as a whole, which includes records from Dr. Emery's office during the relevant time period.

Regarding the ALJ's claim that Dr. Ward's opinion is not supported by his own exam, the ALJ fails to address certain aspects of Dr. Ward's March 28, 2016 examination note, which may support Dr. Ward's opinion that Plaintiff could not sit, stand, or walk for more than one hour.  Dr. Ward documented that on March 28, 2016 Plaintiff reported her pain as 8 out of 10 in severity despite daily Percocet and Tramadol, two prior neck surgeries followed by physical therapy, and "multiple injection[s]" of the left shoulder and neck trigger points.  R. 299.  He noted that Plaintiff had to rotate her torso in order to rotate her head with limited range of motion of the cervical spine; had spastic left upper trapezius muscles, had significant (++) tenderness to palpation of the left upper trapezius muscle with three trigger sites; and had bilaterally reduced reflexes of the bilateral upper extremities as compared to the lower extremities (2+/4 versus 5/5).  R. 302-03.

Dr. Ward also reviewed the MRI in the examination notes.  R. 303-04.  His impression was chronic axial left neck pain and left neck trapezius trigger sites with history of C3-6 fusion, depression, and anxiety.  R. 304.  He noted that Plaintiff's level of function was modified independent ambulation with a straight cane, and further observed that although her activities of

---

https://www.ssa.gov/oidap/Documents/Social%20Security%20Administration.%20Disability%20Determination%20Ser.pdf (last visited Aug. 14, 2023).

daily living required minimum assistance, she still had a gait disturbance and decreased functional status with "[p]oor" rehabilitation potential. R. 304-05. Dr. Ward recommended that Plaintiff undergo further trigger site injections for pain management and evaluation for use of a transcutaneous neurostimulator. R. 305.

The ALJ failed to discuss Dr. Ward's additional findings during the March 28, 2016 examination in concluding Dr. Ward's opinions were unsupported by his medical records. Instead, the ALJ inaccurately summarized Dr. Ward's March 28th examination as showing merely "tenderness and pain on range of motion, but negative Romberg and normal strength." R. 1501. The ALJ's failure to address the entirety of Dr. Ward's March 28, 2016 examination in weighing and assessing treating Dr. Ward's medical opinions is in error.

The ALJ's conclusion that Dr. Ward's opinions are inconsistent with the record as a whole suffers from a similar defect. As addressed *supra*, the ALJ failed to consider the record as a whole. On the contrary, the ALJ completely ignored records from Dr. Emery during the relevant time period, which records predate Plaintiff's treatment with Dr. Ward, and may be consistent with Dr. Ward's opinions. While the ALJ characterizes the record as demonstrating only "some tenderness and pain on range of motion, but negative Romberg and normal strength," relevant evidence shows Plaintiff was prescribed various pain medications and received multiple trigger point injections throughout 2014, 2015, and 2016. In addition, Plaintiff's MRI's showed significant cervical abnormalities, and an abnormal EMG showed bilateral upper extremity radiculopathy with chronic neurogenic changes. R. 281, 346-48, 469-72, 534-25, 588-89, 823-26. Instead of addressing these records and comparing them to Dr. Ward's opinion, the ALJ fails to mention these records at all, leaving unclear whether Dr. Ward's opinion is consistent with other medical evidence in the case.

It is not for me to say whether Dr. Ward's medical opinions are supported by his own exam or consistent with the medical record because, in testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178.  But an ALJ also may not "cherry pick" evidence to support a finding of non-disability.  *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016).  There can be a fine line between evaluating the decision for cherry-picking and reweighing the evidence.  Here, however, the decision does not reflect that the ALJ considered all of the medical evidence, and Plaintiff has pointed to key medical evidence that may support Dr. Ward's opinions.  I therefore find the ALJ's analysis of Dr. Ward's opinion unsupported by substantial evidence and remand is appropriate.  Because I find remand appropriate, Plaintiff's other arguments need not be addressed.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986).

## CONCLUSION

The ALJ's rejection of Plaintiff's testimony and Dr. Ward's medical opinions is not supported by substantial evidence and Plaintiff was prejudiced thereby.  It is therefore **ORDERED and ADJUDGED** that:

1.   Plaintiff's Motion for Summary Judgment (DE 23) is **GRANTED**.

2.  Defendant's Motion to Summary Judgment (DE 29) is **DENIED.**

3.  Defendant's administrative decision is **VACATED AND REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is instructed to conduct such further proceedings as are necessary to issue a new decision based on substantial evidence and proper legal standards.

4.  I will separately enter a final judgment in accordance with Federal Rule of Civil

Procedure 58.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this <u>14th</u> day of August,

2023.

SHANIEK MILLS MAYNARD
UNITED STATES MAGISTRATE JUDGE